# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | | |
|---|---|---|
| **ANDREW SCHLESINGER** | * | **CIVIL ACTION NO. 14-2593** |
| **VS.** | * | **JUDGE HAIK** |
| **BELLE OF ORLEANS LLC** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation are Defendant's Motion for Summary Judgment filed by Belle of Orleans, L.L.C. d/b/a Amelia Belle Casino ("Amelia Belle"), on April 22, 2015 [rec. doc. 14], and the Motion for Summary Judgment filed by plaintiff, Andrew Schlesinger ("Schlesinger"), on May 18, 2015. [rec. doc. 20]. Schlesinger filed opposition to the Amelia Belle's motion on May 18, 2015. [rec. doc. 19]. Amelia Belle filed a combined opposition to Schlesinger's motion and a reply to its own motion on May 25, 2015. [rec. doc. 22]. Schlesinger filed a reply to his motion on May 28, 2015. [rec. doc. 26].

Oral argument was held on May 27, 2015, after which the undersigned took the motions under advisement. [rec. doc. 24].

For the reasons set forth below, the undersigned recommends that the motions [rec. docs. 14, 20] be **GRANTED IN PART AND DENIED IN PART**.

## Background

Schlesinger filed this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*.

Schlesinger is a resident of Thibodaux, Louisiana, and attends Nicholls State University. He is afflicted with spina bifida and is wheelchair-bound.

Schlesinger was a frequent patron of the Amelia Belle Casino located at 500 Lake Palourde Road in Amelia, Louisiana. Belle of Orleans, L.L.C. owns and operates the Amelia Belle Casino ("Amelia Belle") and certain of the adjacent properties and improvements. The Amelia Belle is a Class H passenger vessel and riverboat gaming vessel which was built in 1995 at Avondale Shipyards. [rec. doc. 14, Exhibit 1, Declaration of Reginald White ("White Declaration")].

The Amelia Belle riverboat was docked in Amelia shortly after Hurricane Katrina, which occurred in 2005. The original owners of the casino installed a custom parking facility and sidewalks, which were located on dry land adjacent to the riverboat. Inside the facility, Amelia Belle installed ATMs, vending machines, cashier counters, four restrooms, video poker machines, a sports bar, a buffet restaurant and a hotdog stand. In the last three years, the Amelia Belle has not left its dock. [rec. doc. 18, Stipulation of Facts].

2

Schlesinger alleges that he experienced serious difficulty accessing the goods and utilizing the services at the casino due to architectural barriers. [Complaint, ¶ 13]. These include inadequate parking spaces; an excessively steep gangway at the facilities entryway; lack of clear floor space in the first-floor restrooms; excessive slopes on the accessible route to the first-floor restroom; excessive counter heights off of the finished floor at the first-floor players' club counter, second-floor cashier counter, second-floor gaming tables, and second-floor sports bar counter; uninsulated pipes under the lavatories in the second-floor men's room; lack of disabled seating in the second-floor sports bar and third-floor buffet area, and excessive slopes in the clear floor space in the third-floor restroom. [Complaint, ¶ 16].

On August 26, 2014, Schlesigner filed this action alleging that Amelia Belle was operating a facility in violation of Title III of the ADA by failing to remove architectural barriers where removal of the barriers was readily achievable. Amelia Belle filed a motion for summary judgment on April 22, 2015 [rec. doc. 14], followed by Schlesinger's cross-motion for summary judgment filed on May 18, 2015 [rec. doc. 20].

At the hearing held on May 27, 2015, the undersigned limited the report and recommendation on the motions for summary judgment to two issues: (1) whether

or not Subpart C of Title III of the ADA applies, and (2) whether or not the Court's reasoning in *Association for Disabled Americans, Inc. v. Concorde Gaming Corp.* (*Goldcoast Entertainment Cruises, Inc.*), 158 F.Supp.2d 1353, 1359 (S.D. Fla. 2001) applies as persuasive authority.

## Summary Judgment Standard

Fed. R. Civ. Proc. 56(a) provides that a motion for summary judgment shall be granted if the pleadings, depositions, discovery responses, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). When the burden at trial rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case. *International Association of Machinists and Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A.*, 199 F.3d 796, 798 (5th Cir. 2000) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Courts consider the evidence in the light most favorable to the nonmovant, yet the nonmovant may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by setting forth

particular facts indicating that there is a genuine issue for trial. *Id*. (*citing Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Id*. (*citing Celotex Corp*., 477 U.S. at 322, 106 S.Ct. 2458)).

## ANALYSIS

### Title III of the Americans with Disabilities Act

Schlesinger claims that he has been discriminated against on account of his disability due to architectural barriers which limit his access to Amelia Belle's casino, in violation of the ADA.

Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 121 S.Ct. 1879, 1889, 149 L.Ed.2d 904 (2001); *Concorde Gaming Corp*., 158 F.Supp.2d at 1359. To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), 21 public services (Title II), 22 and public accommodations (Title III). *Id*.

> Title III of the ADA prescribes, as a general rule:
>
> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C.A. § 12182(a).

The phrase "public accommodation" is defined in terms of 12 extensive categories, which the legislative history indicates "should be construed liberally" to afford people with disabilities "equal access" to the wide variety of establishments available to nondisabled." *PGA Tour, Inc.*, 121 S.Ct. at 1890. Included within these 12 categories are "a restaurant, bar, or other establishment serving food or drink." 28 U.S.C. § 12181(7)(B). *Id*.

Although definitions of "public accommodation" do not expressly mention passenger vessels, the Supreme Court has held that cruise ships fall within this definition of the ADA. *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 129, 125 S.Ct. 2169, 2177, 162 L.Ed.2d 97 (2005), 215 F.3d 1237, 1241 (11th Cir. 2000) (*per curiam*); *see also Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1241 (11th Cir. 2000) ("[A] public accommodation aboard a cruise ship seems no less a public accommodation just because it is located on a ship instead of upon dry land. In other words, a restaurant aboard a ship is still a restaurant. Very

important [sic], Congress made no distinctions – in defining "public accommodation" – based on the physical location of the public accommodation. We conclude, therefore, that those parts of a cruise ship which fall within the statutory enumeration of public accommodations are themselves public accommodations for the purposes of Title III.").

Title III makes it illegal for a place of public accommodation to intentionally exclude individuals simply because they are disabled. *Concorde Gaming*, 158 F.Supp.2d at 1361 (*citing* 42 U.S.C. § 12182(b)(1)(A)). Title III's concept of discrimination, though, also extends to some forms of *de facto* discrimination. *Id*. (*citing* 42 U.S.C. § 12182(b)(2)(A); *Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1069 (D.Haw. 2000) ("The scope of the Act covers not only intentional discrimination, but also discriminatory effects of benign neglect, apathy, and indifference.")). Additionally, Title III requires the removal of architectural or structural barriers that prevent access to public accommodations. *Id.*, 158 F.Supp.2d at 1361.

> Under the statute, disability discrimination includes:
>
> (iv) a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of vehicles

or rail passenger cars by the installation of a hydraulic or other lift), where such removal is readily achievable; and

(v) where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable.

42 U.S.C.A. § 12182(b)(2)(A)(iv), (v).

If a place of public accommodation fails to remove architectural barriers, the enforcement provisions of the ADA provides a private right of action. *Parr*, 96 F.Supp.2d at 1070-71 (*citing* 42 U.S.C. § 12188(a)(1)). A private action under Title III is available to any person who is "being subjected to discrimination on the basis of disability" or who has "reasonable grounds for believing that such person is about to be subjected to discrimination . . ." *Id*. (citing 42 U.S.C. § 12188(a)(1)). A civil action under Title III could also be brought by the Attorney General. 42 U.S.C. § 12188(b).

Title III incorporates the remedies and procedures of Title II of the Civil Rights Act of 1964. *Id*. (citing 42 U.S.C. § 12188(a)(1)). The court may order injunctive relief which includes an order to make a facility "readily accessible," or, where appropriate, "requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods . . ." *Id*. (*citing* 42

U.S.C. § 12188(a)(2)). In an action brought by the Attorney General, the court may also award "monetary damages to persons aggrieved when requested by the Attorney General." *Id*. (*citing* 42 U.S.C. § 12188(b)(2)(B)).

### *Amelia Belle's Motion for Summary Judgment*

Amelia Belle asserts that Schlesinger's ADA claim should be dismissed because its riverboat casino is a passenger vessel, and the 1991 and 2010 ADA Standards for Accessible Design ("1991 Standards" and "2010 Standards," respectively) published by the Department of Justice ("DOJ") are therefore inapplicable to the Amelia Belle. [rec. doc. 14]. Accordingly, it argues, no ADA violation occurred.

In the ADA, Congress directed the Attorney General and the Department of Transportation to issue regulations on or before July 26, 1991 to effectuate the ADA's provisions. *Resnick v. Magical Cruise Co., Ltd.*, 148 F.Supp.2d 1298, 1303-04 (M.D. Fla. 2001) (*citing* 42 U.S.C. § 12186). Schlesinger bases his claims on the public accommodation provisions of the ADA rather than the transportation vehicle provisions and, accordingly, the regulations of the DOJ rather than the Department of Transportation are at issue here. *Id*. at 1304. The DOJ's final regulations – the ADAAG (American Disabilities Act Accessibility Guidelines) – relating to public accommodations were adopted by

9

the Department of Justice in 1991 and are contained in Appendix A to 28 C.F.R. Part 36. *Id.*, 148 F.Supp.2d at 1304.[1]

However, the DOJ has taken the position that the regulations regarding new construction and alterations promulgated under its authority do not apply to cruise ships and that subpart D of Title III relating to new construction and alterations will not be extended to these vessels until appropriate requirements are established.[2] *Id.* (*citing Deck v. American Hawaii Cruises, Inc.*, 51 F.Supp.2d 1057, 1060-1061 (D.Haw.1999)) (discussing the departmental position on the applicability of the ADAAG to cruise ships, floating restaurants, *etc.*, and concluding that "to the extent Plaintiff's claims fall within subpart D of the ADA regarding new construction and alterations of facilities, these claims are not covered by the ADA.").

Amelia Belle asserts that it is entitled to summary judgment because the 1991 Standards are inapplicable to passenger vessels. Schlesinger concedes that a

---

[1] The 2010 Standards consist of the 2004 ADAAG and the requirements contained in 28 C.F.R. Pt. 36, Subpt.D. 28 C.F.R. § 36.104 Definitions. Facilities newly constructed or altered on or after January 26, 1993 and before September 15, 2010, must comply with the 1991 Standards. 28 C.F.R. § 36.406(a) Appx. Those newly constructed or altered on or after September 15, 2010 and before March 15, 2010, may choose between the 1991 or 2010 Standards. *Id.* New construction and alterations on or after March 15, 2012, must comply with the 2010 Standards. *Id.*

[2] Standards for new construction and alterations of places of public accommodation located in boats are not yet included in the ADAAG. *Resnick*, 148 F.Supp.2d at 1304 (*citing* 28 C.F.R. Pt. 36, Appx. B, at 623 (discussion of § 36.104)).

party cannot bring a claim under Subpart D of the DOJ regulations for failure to *construct* a mobile facility (including boats) in accordance with the 1991 Standards. [rec. doc. 19, p. 7]. However, he argues that, under the DOJ regulations, mobile facilities (including boats), must comply with Subparts A, B and C of the DOJ regulations.

Subpart A of the of the DOJ regulations contains a general overview, which includes the purpose, application, relationship to other laws, and definitions sections. 28 C.F.R. § 36 Subpt. A. The purpose of this part is to implement Title III of the ADA, "which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation and commercial facilities to be designed, constructed, and altered in compliance with the accessibility standards established by this part." 28 C.F.R. § 36.101.

Subpart B of the DOJ regulations sets forth the general principles of nondiscrimination applicable to all entities subject to this part. 28 C.F.R. § 36.213. This section tracks the language of 42 U.S.C.A. § 12182(a), and provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public

accommodation."

28 C.F.R. § 36.201.

Subparts C and D of this part provide guidance on the application of the statute to specific situations. 28 U.S.C. § 36.213. Subpart C, which contains the regulations regarding removal of barriers, provides:

> General. A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, *i.e.*, easily accomplishable and able to be carried out without much difficulty or expense.

28 C.F.R. § 36.304(a).

Subpart D of the regulations applies to new construction and alterations. Under this Subpart, discrimination "includes a failure to design and construct facilities for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 36.401.

As indicated above, Subpart D does not apply to vessels. However, *Deck* noted that language in the Code of Federal Regulations indicates that subpart D may be applicable to cruise ships in the future. 51 F.Supp.2d at1061 n. 2 (*citing* 56 Fed.Reg. 45584-01 (1991)).

Schlesinger indicates in his opposition brief that he is bringing suit under Subpart C, governing removal of barriers. [rec. doc. 19, p. 5 n. 26]. In the

preamble to the regulations relating to public accommodations, the DOJ observed as follows:

> [C]ommenters raised questions about the applicability of this part to places of public accommodation operated in mobile facilities (such as cruise ships, floating restaurants, or mobile health units). Those places of public accommodation are covered under this part, and would be included in the definition of 'facility.' Thus, the *requirements of subparts B and C would apply to those places of public accommodation*. (emphasis added)

*Deck*, 51 F.Supp.2d at 1060 (*citing* 28 C.F.R. Pt. 36, App. B).

In *Deck*, the court found that to the extent plaintiff's claims fell "*within subpart D of the ADA regarding new construction and alterations of facilities*, these claims are *not* covered by the ADA." (emphasis added). However, the Court further found that, to the extent that plaintiff raised *other* ADA claims, "they are clearly applicable to cruise ships," and were thus properly brought. (emphasis added).³ 51 F.Supp.2d at 1061.

Schlesinger does not base his claims on Subpart D, but rather on Subpart C governing removal of barriers. While DOJ's failure to promulgate Subpart D

---

³*See contra*, *Access Now, Inc. v. Holland Am. Line-Westours, Inc.*, 147 F.Supp.2d 1311, 1313 (S.D. Fla. 2001) ("The Court expressly rejects the reasoning of *Deck* . . . The regulations relied upon by the *Deck* court are contrary to plain language of the ADA, which contemplates access actions even in the absence of specific regulations. Therefore, those regulations do not control."

regulations prevents an ADA action based on Subpart D, that failure does not prevent other claims based on other sections of the ADA. *White v. NCL America, Inc.*, 2006 WL 1042548, at *4 (S.D. Fla. Mar. 8, 2006). Thus, the absence of Subpart D regulations is no bar to his action under the readily achievable standard. *Id.* (*citing Concorde Gaming*, 158 F. Supp.2d at 1362 n. 4 (evaluating access to restaurants, rest rooms, dance floors, and gaming tables on a casino ship under the readily achievable standard); *Access Now,* 147 F.Supp.2d at 1312-13 (rejecting a similar Subpart D argument)).

Accordingly, the undersigned recommends that Amelia Belle's motion be **GRANTED IN PART AND DENIED IN PART**, and that Schlesinger be allowed to proceed on his claim under Subpart C of the DOJ regulations.

### *Schlesinger's Motion for Summary Judgment*

Schlesinger argues that he is entitled to summary judgment finding Amelia in violation of Title III of the ADA for its failure to remove certain architectural barriers at the casino. [rec. doc. 20].

In order to be succeed on his claim for liability under the ADA for removal of barriers, Schlesinger must prove both that: (1) the existing facilities at defendant's place of business present an "architectural barrier" under the ADA,

and (2) the removal of the "barrier" is "readily achievable" under the ADA. *Parr*, 96 F.Supp.2d at 1085 (citing *Gilbert v. Eckerd Drugs*, 1998 WL 388567, at *2 (E.D. La. July 8, 1998)).

Though not defined in the ADA, some courts have interpreted the term "architectural barrier" to mean any element of an existing facility that does not meet or exceed the requirements of the ADA Accessibility Guidelines for Buildings and Facilities (ADAAG). *Snyder v. Lady Slings the Booze, LLC*, 2014 WL 7366665, at *3 (W.D. Ky. Dec. 24, 2014) (*citing Wyatt v. Ralphs Grocery Co.*, 65 Fed.Appx. 589, 590 (9th Cir. 2003); *Parr*, 96 F.Supp.2d at 1086; *Pascuiti v. N.Y. Yankees*, 87 F.Supp.2d 221, 225-26 (S.D.N.Y.1999)).

Schlesinger argues that any element of a facility which does not comply with the 1991 Standards is a "barrier," and must be brought into compliance, if modifying the barrier is "readily achievable." [rec. doc. 20, p. 4]. The case law establishes that a "barrier" under the ADA *should* be determined using the Standards for Accessible Design, 28 C.F.R. Pt. 36, App. A, as a guide. (emphasis added). *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 435 F.Supp.2d 1217, 1226 (N.D. Ga. 2005), *aff'd*, 452 F.3d 1269 (11th Cir. 2006); *Pascuiti*, 87 F.Supp.2d at 226 ("even though only new construction and alterations must comply with the Standards, those Standards nevertheless provide valuable *guidance* for

15

determining whether an existing facility contains architectural barriers."). (emphasis added).

However, it is clear the Standards are not intended to prescribe what must be done to address an alleged barrier in a facility that existed at the time the ADA was passed. *Id*. They are to be used as a *guide*, *not a requirement*. (emphasis added). *Id*. Thus, technical violations of the ADAAG are not sufficient to confer liability on owners and operators of "existing facilities." *MacClymonds v. IMI Investments, Inc*., 2007 WL 1306803, at *6 (S.D. Tex. Apr. 5, 2007).

In order for Schlesinger to be successful on his motion for summary judgment, he must establish, not only that architectural barriers exist, but also that his proposed method of removal is "readily achievable." *Id*; *Pacuiti*, 87 F.Supp.2d at 226. "Readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).

Congress included in the ADA factors to be considered in evaluating whether removal of a barrier is "readily achievable." *Gathright-Dietrich,* 435 F.Supp.2d at 1224. The factors are: (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the

covered entity; (7) overall size of the business of a covered entity; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity; and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity. *Id*. (*citing* § 12181(9)).

    Schlesinger retained an engineer, Nicholas Heyback, P.E. ("Heybeck"), to inspect the casino for mobility-related architectural barriers and to write a report. [rec. doc. 20, Exhibit Heybeck]. Heybeck identified each alleged architectural barrier and compared it the ADAAG's standards, finding 45 mobility-related access issues, including barriers in the parking facility, entry ramp, slot machines, restrooms, bar, cashier counter, hot dog stand and restaurant. Amelia Belle disputes only some of these barriers: (1) the ramp from the parking lot into the casino; (2) the cashier and Player's Club counters; (3) men's restrooms, (4) the seating area in the restaurant and bar area, and (5) the curb cuts and side walks in the parking area.[4]

---

    [4]Schlesinger had also alleged that the slot machines were at an excessive height from the floor. Amelia Belle represents that it was already in the process of changing out its slot machine prior to Schlesinger's lawsuit, and the newer slot machines will be within the reach range recommended by Heybeck. [rec. doc. 22, p. 8].

At this point, Amelia Belle has not retained a marine architect to counter Schlesinger's position as to the alleged barriers. Thus, the undersigned will not address the merits at this stage of the proceedings.

The undersigned did agree, however, to address the following issue: whether or not the court's ruling in *Concorde Gaming* is persuasive.

Amelia Belle argues that *Concorde Gaming* requires plaintiff to provide evidence showing that he was denied equal access to the use and enjoyment of Amelia Belle's facilities. [rec. doc. 22, p. 4]. As an example, defendant cites the following language from the court's decision:

> Plaintiffs take issue with the height and width of the *Princesa's* ticket counter located at Bay Front Park. Plaintiffs, though, failed to present evidence that they suffered discrimination as a result of the height or width of the ticket counter. The uncontroverted evidence was that greeters meet and assist disabled passengers with the purchase of tickets. Moreover, Plaintiffs reported no trouble in purchasing their tickets. Thus, they have failed to establish any discrimination with respect to the ticket counter.

*Concorde Gaming*, 158 F.Supp.2d at 1364.

Obviously, *Concorde Gaming* is not binding on this Court. This Court is unconvinced by the rationale of the Court in *Concorde Gaming*. The Court in *Concorde Gaming* essentially said that if the facility has personnel available to help the disabled, that is sufficient and no ADA violation occurs. It seems to this

Court that reasoning would preclude the application of many forms *de facto* discrimination, as well as precluding cases of disparate impact, in the absence of any conscious intent to discriminate. Accordingly, the Court declines to adopt the reasoning of *Concorde Gaming* which this Court, in the absence of pertinent Fifth Circuit authority, finds unpersuasive.[5]

Accordingly, **IT IS RECOMMENDED** that Motion for Summary Judgment filed by Amelia Belle be **GRANTED IN PART AND DENIED IN PART**.

## CONCLUSION

For the foregoing reasons, it is recommended that Defendant's Motion for Summary Judgment filed by Belle of Orleans, L.L.C. d/b/a Amelia Belle Casino [rec. doc. 14] be **GRANTED IN PART AND DENIED IN PART**, and that the Motion for Summary Judgment filed by Andrew Schlesinger [rec. doc. 20], be **GRANTED IN PART AND DENIED IN PART**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc.72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk

---

[5] This is not to say that the plaintiff will prevail at trial on these issues. Still to be tried is the issue of "ready achievability" which may be a serious problem for the plaintiff here on, for example, the gangway issue.

of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed August 19, 2015, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE